IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN C. JENSEN, | ) | 2:04-cv-0686-GEB-KJM |
| | ) | |
| Plaintiff, | ) | <u>ORDER</u>[*] |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster | ) | |
| General of the U.S. POSTAL SERVICE | ) | |
| | ) | |
| Defendant. | ) | |

Defendant moves for summary judgment or partial summary judgment on Plaintiff's claims.  Plaintiff opposes the motion.[1]

---

[*]    This motion was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

[1]    In Plaintiff's various opposition filings to Defendant's Motion for Summary Judgment, Plaintiff cites to information contained in several depositions.  Pursuant to Local Rule 56-260, the opposing party is responsible for filing with the Clerk all evidentiary documents cited in the opposing papers.  Pertinent portions of a deposition intended to become part of the official record must be submitted as an exhibit in support of the motion.  L.R. 5-133(j).  Plaintiff failed to submit exhibits containing the portions of the depositions referenced in the opposition filings.  On a motion for summary judgment, the court may only consider the information contained in the record.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003).  Since the pertinent portions of the depositions are not part of the official record, the depositions were not considered in opposition to Defendant's Motion for Summary Judgment.

BACKGROUND

Plaintiff John Jensen is a former employee of the United States Postal Service ("USPS").  He began work for the USPS in 1963, and with the exception of two years military service, worked there continuously until March 2002.  (Statement of Facts in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Statement of Facts") at 3.)  Plaintiff is a Caucasian male who was over fifty-five years of age at the time of all events relevant to this litigation.  (Id.)

From approximately 1997 to March 2002, Plaintiff served as the Postmaster of the Sacramento Post Office.  (Id. at 15.)  During part of that time, however, Plaintiff was detailed as the Sacramento District Business Performance Initiative ("BPI") Coordinator.  (Id.)  In May 2001, after spending twenty-two months as the BPI Coordinator, Plaintiff resumed his position as Postmaster of Sacramento.  (Id. at 16.)  When he returned, his immediate supervisor was Hugo Francia, the Acting District Manager of the Sacramento District.  (Def.'s Statement of Undisputed Facts ("SUF") ¶ 2; Pl.'s Resp. to Def.'s Claimed Undisputed Facts ("SDF") ¶ 2.)  Francia's superior was Al Iniguez, the Vice President of the Pacific Area. (Pl.'s Statement of Facts at 4.)  Both Francia and Iniguez are Hispanic males.  (Id.)

As a result of events that allegedly occurred between May 2001 and March 2002, Plaintiff brings this action against John Potter, Postmaster General of the United States Postal Service.  Plaintiff asserts claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"), and disability discrimination under the Rehabilitation Act, 29 U.S.C. §§ 701, 791, et seq.  In addition,

Plaintiff alleges unlawful retaliation under Title VII, the ADEA, and the Rehabilitation Act.  Furthermore, Plaintiff asserts that he was constructively discharged in violation of the Rehabilitation Act, Title VII, the ADEA, and public policy.  Defendant has moved for summary judgment on all of Plaintiff's claims.  In addition, Defendant has moved to strike Plaintiff's request for punitive damages under the Rehabilitation Act, request for general damages under the ADEA, and request for a jury trial under the ADEA.

DISCUSSION[2]

I.  Discrimination Claims under Title VII and ADEA

Defendant moves for summary judgment on Plaintiff's race and gender discrimination claims brought under Title VII, 42 U.S.C. §§ 2000, et seq., and Plaintiff's age discrimination claim brought under the ADEA, 29 U.S.C. §§ 621, et seq.[3]  To prevail on a Title VII and ADEA discrimination claim, the plaintiff must first establish a prima facie case, either through the presumption set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), or with direct or circumstantial evidence of discriminatory intent.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2004); Cordova v. State Farm Ins. Co., 124 F.3d 1145, 1148 (9th Cir. 1997).

To establish a prima facie case through the McDonnell Douglas presumption, a plaintiff must show that (1) he belongs to a

---

[2]  "The standards applicable to motions for summary judgment are well known, see, e.g., Rodgers v. County of Yolo, 889 F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here."  Reitter v. City of Sacramento, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

[3]  The discussion of the Title VII and the ADEA discrimination claims have been combined because the framework for analysis is the same.  See, e.g., Wallis v. J.R. Simplot Co., 26 F.3d 885, 888-89 (9th Cir. 1994).

protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably.  <u>Bergene v. Salt River Project Agric. Improvement and Power Dist.</u>, 272 F.3d 1136, 1140 (9th Cir. 2001). When a plaintiff does not rely on the <u>McDonnell Douglas</u> presumption, but instead seeks to establish a prima facie case with direct or circumstantial evidence, the "requisite degree of proof . . . on summary judgment is minimal . . . . The plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." <u>Wallis</u>, 26 F.3d at 889; <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1009 (9th Cir. 1986) ("when a plaintiff does not rely on the [<u>McDonnell Douglas</u>] presumption but seeks to establish a prima facie case through the submission of actual evidence, very little such evidence is necessary to raise a genuine issue of fact . . . any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder").

Once the plaintiff establishes a prima facie case through the <u>McDonnell Douglas</u> presumption or with direct or circumstantial evidence of discriminatory intent, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the allegedly discriminatory conduct.  <u>Vasquez</u>, 349 F.3d at 640; <u>Wallis</u>, 26 F.3d at 888-89.  If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for discrimination.  <u>Vasquez</u>, 349 F.3d at 640; <u>Wallis</u>, 26 F.3d at 888-89.

        A.   Race

        Defendant contends that Plaintiff cannot establish a prima facie case of race discrimination under the <u>McDonnell Douglas</u> presumption.  (Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 14.)  As noted previously, however, Plaintiff may establish a prima facie case through either the <u>McDonnell Douglas</u> presumption or by offering direct or circumstantial evidence of discriminatory intent.  <u>Vasquez</u>, 349 F.3d at 640; <u>Cordova</u>, 124 F.3d at 1148.

        Plaintiff offers the declaration of Jackie Gee-Lawver, the former Manager of Training in the Sacramento District, as evidence of discriminatory intent.  (Gee-Lawver Decl. ¶ 1.)  Gee-Lawver states that Francia asked her for a document containing information on the racial make-up of Postal Service employees in the Sacramento District.  (Pl.'s Statement of Facts at 5; Gee-Lawver Decl. ¶ 5.)  Gee-Lawver declares that when Francia viewed the document, he stated that there were "too many Anglo people in higher levels" and "[w]e need more Hispanics."  (<u>Id.</u>)  In addition, Gee-Lawver states that Francia directed her to remove certain employees from the "Key Resources List," a list containing information about Postal Service Managers who were suitable for management and training opportunities.  (Pl.'s Statement of Facts at 4-5; Gee-Lawver Decl. ¶¶ 2,4.)  Gee-Lawver declares that Francia removed Plaintiff from the list, along with three other older, non-Hispanic males, and then instructed her to cancel Plaintiff's management training.  (Pl.'s Statement of Facts at 4-5; Gee-Lawver Decl. ¶ 4.)

        Plaintiff also offers the declaration of Silvia Woodside, the former manger of Human Resources.  (Woodside Decl. ¶¶ 1, 2.)  Woodside declares that Iniguez "told me he wanted to hire all

1 | Hispanics." (Pl.'s Statement of Facts at 13; Woodside Decl. ¶ 3.)
2 | When Woodside informed Iniguez that "such a practice would be
3 | illegal," Iniguez insisted that she "figure out a way to hire all
4 | Hispanics." (Id.)

5 | "The requisite degree of proof necessary to establish a
6 | prima facie case is minimal . . . . The plaintiff need only offer
7 | evidence which gives rise to an inference of unlawful discrimination."
8 | Wallis, 26 F.3d at 889.  The statements of Francia and Iniguez,
9 | Plaintiff's supervisors, are sufficient to raise an inference of
10 | unlawful discrimination.  See Cordova, 124 F.3d at 1149 ("derogatory
11 | comments can create an inference of discriminatory motive").  In
12 | addition, Defendant concedes that "Plaintiff has raised triable
13 | issues regarding . . . discriminatory animus."[4]  (Def.'s Reply to Pl.'s
14 | Opp'n (Def.'s Reply) at 14.)  Therefore, Plaintiff has established a
15 | prima facie case of race discrimination because there is a genuine
16 | issue of material fact as to discriminatory intent.

17 | Once a plaintiff has established a prima facie case of race
18 | discrimination, the burden shifts to the defendant to articulate a
19 | legitimate, non-discriminatory reason for the allegedly discriminatory
20 | conduct.  Vasquez, 349 F.3d at 641.  Defendant has offered reasons for
21 | certain employment actions that occurred while Plaintiff was the
22 | Postmaster of Sacramento, namely, placing Plaintiff on a Performance
23 | Improvement Plan ("PIP"), issuing Plaintiff a Letter of Warning, and
24 | issuing Plaintiff a Notice of Proposed Reduction.  Francia asserts
25 | that Plaintiff was placed on a PIP because his office was the worst

26 | _____

27 | [4]   Because Defendant concedes that a genuine issue of
material fact exists with regard to discriminatory animus, it would
28 | appear that Defendant also concedes that a genuine issue of
material fact exists with regard to discriminatory intent.

performing unit of the five largest in the Sacramento region.  (SUF ¶ 25; Francia Decl. ¶ 25.)  Francia states that Plaintiff was issued a Notice of Proposed Reduction because he failed to improve the performance of the Sacramento Post Office.  (SUF ¶¶ 22-24; Francia Decl. ¶¶ 21-23.)  Lastly, Francia contends that Plaintiff was given a Letter of Warning because he failed to timely report an on-the-job injury. (SUF ¶ 29; Francia Decl. ¶ 28.)  Therefore, Defendant has satisfied this burden of production because the reasons articulated by Defendant are legitimate and non-discriminatory.

Because Defendant has provided non-discriminatory reasons for the employment actions, the burden shifts back to Plaintiff to show that Defendant's reasons are a pretext for discrimination. Vasquez, 349 F.3d at 641.  However, "when a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." Lowe, 775 F.3d at 1008.  As discussed previously, Plaintiff has established a prima facie case of race discrimination through direct and circumstantial evidence of discriminatory intent; thus, Plaintiff has necessarily raised a genuine issue of material fact as to whether the Defendant's reasons for the employment decisions were a pretext for discrimination. Furthermore, Defendant concedes that "Plaintiff has raised triable issues regarding pretext and discriminatory animus." (Def.'s Reply at 14.)  Therefore, a genuine issue of material fact exists as to whether the Defendant's proffered reasons for the employment decisions were

1 pretextual.   Accordingly, Defendant's motion for summary judgment on
2 Plaintiff's race discrimination claim is denied.

3          B.  Age

4          Defendant argues that Plaintiff cannot establish a prima
5 facie case of age discrimination under the McDonnell Douglas
6 presumption.  (Def.'s Mot. at 14.)   However, as discussed previously,
7 Plaintiff may establish a prima facie case through either the
8 McDonnell Douglas presumption or by offering direct or circumstantial
9 evidence of discriminatory intent.  Vasquez, 349 F.3d at 640; Cordova,
10 124 F.3d at 1148.

11          Plaintiff offers the declaration of Jackie Gee-Lawver, the
12 former Manager of Training in the Sacramento District, as evidence of
13 discriminatory intent.  (Gee-Lawver Decl. ¶ 1.)  Gee-Lawver declares
14 that during a meeting with Francia regarding persons on the Key
15 Resource List, including Plaintiff, Francia looked at the list and
16 stated "These are all ol . . . - you know what I mean.  I want people
17 who are up and coming."  (Pl.'s Statement of Facts at ¶ 4-5; Gee-
18 Lawver Decl. ¶ 3.)  Gee-Lawver understood Francia to be saying the
19 word "old" when he interrupted himself, and so she responded "I guess
20 that leaves me out because I am old."  (Id.)  Gee-Lawver states that
21 Francia did not disagree or correct her reference to the word "old."
22 (Id.)  Furthermore, Gee-Lawver declares that Francia "required me to
23 provide him with eligible retirement dates for mid and high level
24 managers in Sacramento including John Jensen."  (Pl.'s Statement of
25 Facts at 4; Gee-Lawver Decl. ¶ 6.)

26          In addition, Jensen offers the declaration of Gary
27 Greenhalgh, a Postmaster Representative for the National Association
28 of Postmasters.  (Greenhalgh Decl. ¶¶ 1, 2.)  Greenhalgh declares that

8

during meetings with Francia, Francia stated he "did not trust his direct reports, as they were part of the 'good old boys' of Sacramento, they had been there too long and he needed to change that." (Pl.'s Statement of Facts at 6-7; Greenhalgh Decl. ¶ 10.) Furthermore, Plaintiff declares that Francia "made statements like . . . people who are eligible to retire should 'go ahead.'" (Jensen Decl. ¶ 17.2.)

        The alleged statements by Francia give rise to an inference of age discrimination. See Cordova, 124 F.3d at 1149 ("derogatory comments can create an inference of discriminatory motive").  In addition, the Defendant concedes that "[p]laintiff has raised triable issues regarding . . . discriminatory animus."[5]  (Def.'s Reply at 14.) Accordingly, Plaintiff has established a prima facie case because there is a genuine issue of material fact as to discriminatory intent. Therefore, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the allegedly discriminatory conduct.  Vasquez, 349 F.3d at 641.  As discussed previously, Defendant has met this burden by articulating non-discriminatory reasons for the allegedly discriminatory conduct.  See supra pages 6-7.  Consequently, the burden shifts back to Plaintiff to show that Defendant's reasons are a pretext for discrimination. Vasquez, 349 F.3d at 641.  However, because Plaintiff established a prima facie case through actual evidence, he has necessarily raised a genuine issue of material fact whether Defendant's articulated reasons are pretextual.  See Lowe v. City of Monrovia, 775 F.3d 998, 1008 (9th

_____

        [5]  Because Defendant concedes that a genuine issue of material fact exists with regard to discriminatory animus, it would appear that Defendant also concedes that a genuine issue of material fact exists with regard to discriminatory intent.

Cir. 1986).  Furthermore, Defendant concedes that "Plaintiff has raised triable issues regarding pretext and discriminatory animus." (Def.'s Reply at 14.)  Accordingly, Defendant's motion for summary judgment on Plaintiff's age discrimination claim is denied.

C.  Gender

Defendant contends that Plaintiff cannot establish a prima facie case of gender discrimination under the McDonnell Douglas presumption. (Def.'s Mot. at 14.)  However, Plaintiff may establish a prima facie case through either the McDonnell Douglas presumption or by offering direct or circumstantial evidence of discriminatory intent. Vasquez, 349 F.3d at 640; Cordova, 124 F.3d at 1148.

The only evidence of gender discrimination offered by Plaintiff is an alleged statement by Francia regarding "the good 'ol boys system" of Sacramento.  (Greenhalgh Decl. ¶ 4; Pl.'s Statement of Facts at 6.)  This single comment by Francia, without more, is insufficient evidence of discriminatory intent.  See Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir. 1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990)(holding that a "stray" remark was insufficient to establish discrimination).  Since Plaintiff cannot establish a prima facie case of gender discrimination through direct or circumstantial evidence of discriminatory intent, Plaintiff must rely on the McDonnell Douglas presumption to establish a prima facie case.  See Vasquez, 349 F.3d at 640-41 (stating that because plaintiff had failed to establish direct or circumstantial evidence of

discriminatory intent, the plaintiff must proceed under the <u>McDonnell</u>
<u>Douglas</u> framework to establish a prima facie case).

Assuming arguendo that Plaintiff can establish a prima facie
case through the <u>Mc Donnell Douglas</u> presumption, Plaintiff must
produce additional evidence to rebut Defendant's non-discriminatory
reasons for the employment actions.  <u>Goodwin v. Hunt</u>, 150 F.3d 1217,
1220 (9th Cir. 1998).  A plaintiff can prove pretext through direct
evidence, by showing that unlawful discrimination more likely
motivated the employer, or through circumstantial evidence, by showing
that the employer's proffered explanation is unworthy of credence
because it is internally inconsistent or otherwise not believable.
<u>Vasquez</u>, 349 F.3d at 641.  Direct evidence is evidence which, if
believed, proves the fact of discriminatory animus without inference
or presumption, while circumstantial evidence is evidence that
requires an additional inferential step to demonstrate discrimination.
<u>Coghlan v. American Seafoods Company LLC</u>, 413 F.3d 1090, 1095 (9th
Cir. 2005).

A showing that Defendant treated similarly situated
employees outside Plaintiff's class more favorably would be probative
of pretext.  <u>Vasquez</u>, 349 F.3d at 641.  However, Plaintiff has not
offered any evidence that similarly situated female employees were
treated more favorably.  The only evidence Plaintiff offers of pretext
are alleged statements by Francia to a work team "to find something
wrong" with a post office station under Jensen's supervision, even
though the team had given the station a "100% rating." (Pl.'s
Statement of Facts at 7; Greenhalgh Decl. ¶ 12.)  However, the
statement, if true, does not directly establish that Francia's actions
were motivated on account of Plaintiff's gender.  Rather, the

statement is circumstantial evidence of pretext because it requires an "additional inferential step to demonstrate discrimination" on the basis of gender.  See Coghlan, 413 F.3d at 1095.  When the plaintiff offers circumstantial evidence of discriminatory motive, that evidence must be specific and substantial to create a triable issue of fact. Goodwin, 150 F.3d at 1222.  The evidence offered by Plaintiff fails to specifically or substantially establish that Defendant's articulated non-discriminatory reasons for the employment actions were a pretext for gender discrimination.

     Therefore, even assuming that Plaintiff could establish a prima facie case under the McDonnell Douglas framework, he has not offered sufficient evidence that demonstrates Defendant's explanations for the employment actions were pretextual.  See Vasquez, 349 F.3d at 640-41 (assuming without deciding that plaintiff established a prima facie case of discrimination, but affirming summary judgment against plaintiff because he did not demonstrate that the employer's non-discriminatory explanation for his demotion was pretextual). Accordingly, Defendant's motion for summary judgment on Plaintiff's gender discrimination claim is granted.

II.  Disability Discrimination under the Rehabilitation Act

     Defendant argues that Plaintiff cannot establish a claim of disability discrimination under the Rehabilitation Act, 29 U.S.C. §§ 701, 791, et seq.  (Def.'s Mot. at 27.)  The standards governing disability discrimination under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") are essentially the same. Coons v. Sec'y of U.S. Dept. of the Treasury, 383 F.3d 879, 884 (9th Cir. 2004); Collins v. Longview Fibre Co., 63 F.3d 828, 832 (9th Cir. 1995).  To establish a prima facie case of disability discrimination

under the ADA, a plaintiff must show that (1) he is a disabled person within the meaning of the ADA, (2) he is able to perform his essential job functions with or without reasonable accommodation, and (3) he has suffered an adverse employment decision because of his disability. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

Defendant argues that Plaintiff is not a disabled person within the meaning of the ADA. (Def.'s Mot. at 29.)  Courts apply a three step process to determine if a person is disabled within the meaning of the statute: first, the plaintiff must suffer from a physical or mental impairment; second, the impairment must have affected a "major life activity"; third, the impairment must have "substantially limited" the identified major life activity.  See e.g. Bragdon v. Abbott, 524 U.S. 624, 631-41 (1998).  To constitute a substantial impairment, a plaintiff must be completely unable to perform the activity or be significantly restricted as to the condition, manner or duration under which he or she can perform the activity as compared to an average person in the general population. Coons, 383 F.3d 879 (9th Cir. 2004).

Plaintiff alleges that he has a mental impairment because he suffers from clinical depression. (Pl.'s Memo. of P.& A. at 8). Plaintiff's doctor, M. Rynda Norsell, states that Plaintiff has Adjustment Disorder with Mixed Anxiety and Chronic Depressed Mood. (Jensen Decl. Attach. 9.)  Plaintiff alleges that due to this mental impairment, several of his major life activities have been substantially impaired, including eating, driving/traveling, concentration, sleeping, sexual relations, and working. (Pl.'s Statement of Facts at 40; Jensen Decl. ¶¶ 8, 53.)

First, Plaintiff contends that his ability to eat has been substantially impaired. (Pl.'s Statement of Facts at 40; Jensen Decl. ¶ 53.) "Broadly speaking, eating is a major life activity. However, eating specific types of foods, or eating specific amounts of food, might or might not be a major life activity." <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1040 (9th Cir. 1999). Plaintiff has not alleged that he is unable to eat, nor has Plaintiff stated how his ability to eat has been affected by his disability. Rather, Plaintiff only asserts that "important activities in my life including . . . eating were impaired." (Jensen Decl. ¶ 53.) Conclusory declarations are insufficient to raise a question of material fact. <u>Head v. Glacier Northwest, Inc.</u>, 413 F.3d 1053, 1059 (9th Cir. 2005). "To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self serving and must contain sufficient detail to convey the existence of an impairment." <u>Id.</u> Since Plaintiff's declaration does not contain sufficient detail to convey the existence of a substantial eating impairment, no genuine issue of fact exists regarding whether his ability to eat has been substantially affected.

Second, Plaintiff contends that his ability to travel/drive has been substantially impaired. (Pl.'s Statement of Facts at 40; Jensen Decl. ¶ 53.) Plaintiff states he "experienced alarming episodes such as . . . getting lost driving to work which happened several times." (Jensen Decl. ¶ 53.) The Ninth Circuit has expressed doubt whether traveling is a major life activity. <u>Coons</u>, 383 F.3d at 885. In <u>Coons</u>, the Ninth Circuit stated:

> Even if travel were a major life activity, Coons would have to show that he is either unable to travel, or that the condition, manner or duration under which he can travel is significantly

1              restricted as compared to the average person.
              Coons does not allege that he cannot travel

2              because of his impairments, but only that he
              cannot travel extensively.

3

4  Id.  Similarly, Plaintiff has not alleged that he is unable to

5  travel/drive.  Rather, Plaintiff only alleges that on several

6  occasions he became lost while driving to work.  Becoming lost while

7  driving does not establish that the condition, manner or duration

8  under which he can travel/drive is significantly restricted as

9  compared to an average person in the general population.  See id.

10  (holding that plaintiff's ability to travel was not substantially

11  impaired because he did not present evidence that he was unable to

12  ride in a car, train, airplane, or was unable to manage short distance

13  flights.)  Therefore, no genuine issue of material fact exists as to

14  whether Plaintiff's ability to travel has been substantially impaired.

15        Third, Plaintiff contends that his ability to concentrate

16  has been substantially impaired.  (Pl.'s Statement of Facts at 40;

17  Jensen Decl. ¶ 53.)  Courts have reached different conclusions as to

18  whether concentration is a major life activity.  Compare Head, 413

19  F.3d at 1061 ("thinking" is a major life activity), with Pack v. Kmart

20  Corp., 166 F.3d 1300, 1305 (10th Cir. 1999) ("concentration is not

21  itself a major life activity).  However, assuming that concentration

22  is a major life activity, Plaintiff must show that his ability to

23  concentrate has been substantially affected.  Plaintiff does not

24  allege that he is completely unable to concentrate.  Rather, Plaintiff

25  states that he "experienced . . . episodes such as unconsciously

26  biting through the skin of my finger," that he had "ideas of harming

27  Mr. Francia," and that he "did not report a minor accident that

28  happened to me at work."  (Jensen Decl. ¶¶ 53-54.)  Plaintiff does not

describe the frequency of these occurrences or whether they were severe, long term, or had a permanent impact on his ability to concentrate. See Pack, 166 F.3d at 1305-06. Consequently, Plaintiff's assertions do not establish that the condition, manner or duration of his ability to concentrate is significantly impaired as compared to an average person in the general population. Cf. Head, 413 F.3d at 1061 (stating that a "constant impairment" of the ability to think is a substantial limitation, but inability to think three times in five months is not). Therefore, no genuine issue of material fact exists as to whether Plaintiff's ability to concentrate has been substantially impaired.

Fourth, Plaintiff alleges that his ability to sleep has been substantially impaired. (Pl.'s Statement of Facts at 40; Jensen Decl. ¶¶ 8,53.) Sleeping is a major life activity. E.g. Head, 413 F.3d at 1060. Plaintiff has not alleged that he is unable to sleep. Rather, Plaintiff states that he experienced "sleeplessness" and "disturbing" nightmares, in some of which he "would be naked in a meeting with Mr. Francia while he was berating me and the other people in the room would be laughing." (Pl.'s Statement of Facts at 40; Jensen Decl. ¶¶ 8,53.) Plaintiff's psychologist states that Plaintiff reported receiving four to five hours of sleep for two weeks. (Jensen Decl. Attach. 3.) However, Plaintiff does not state whether this period of sleeplessness was severe, long term, or had a permanent impact. Pack, 166 F.3d at 1305-06. Experiencing sleeplessness over a two-week period does not demonstrate that Plaintiff was substantially restricted in his ability to sleep as compared to an average person in the general population. See Pack, 166 F.3d at 1305-06 (plaintiff's sleeping not substantially impaired where she experienced episodes of

sleep disruption and woke up without feeling rested).  Therefore, no genuine issue of material fact exists as to whether Plaintiff's ability to sleep has been substantially impaired.

Fifth, Plaintiff alleges that because of his disability, he experienced a loss of libido.  (Jensen Decl. ¶ 8.)  Engaging in sexual relations is a major life activity.  McAlindin, 192 F.3d at 1234. Plaintiff does not assert that he is unable to engage in sexual relations, but rather that he has experienced a loss of sexual desire. However, a loss of sexual desire does not demonstrate that the condition, manner, or duration of his ability to engage in sexual relations has been substantially affected as compared to the average person in the general population.  Cf. McAlindin v. County of San Diego, 192 F.3d 1226, 1235 (9th Cir. 1999) (plaintiff's ability to engage in sexual relations was substantially impaired because he was impotent as the result of medication).  Therefore, there is no genuine issue of material fact whether Plaintiff's ability to engage in sexual relations has been substantially impaired.

Lastly, Plaintiff alleges that his ability to work was affected by his disability.  (Jensen Decl. ¶ 53.)  To establish a substantial limitation on his ability to work, Plaintiff must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997).  The inability to "perform one particular job," id., or "work for one particular supervisor" does not constitute such a limitation.  See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1062 (7th Cir. 2000)("standing alone, a personality conflict between an

employee and a supervisor--even one that triggers the employee's
depression--is not enough to establish that the employee is disabled,
so long as the employee could still perform the job under a different
supervisor").

      Plaintiff contends that "[m]y symptoms related to the stress
imposed on me by Mr. Francia were becoming worse over time. . . . By
the end of January 2002, I was struggling to maintain my composure at
work and to perform my duties."  Plaintiff's doctor, N. Rynda Norsell,
states that Plaintiff "attributed the source of his stress to the
managerial style of his immediate supervisor, Hugo Francia, whom he
considers to be unsupportive and even obstructive" to the Plaintiff's
work needs.  (Jensen Decl. Attach. 9.)  Plaintiff's doctor further
notes that Plaintiff's "stressor" is the "alleged unprofessional
behavior of a supervisor . . . ."  (Id.)  When viewed in a light most
favorable to Plaintiff, his allegations do not establish that he could
not perform a class of jobs or broad range of jobs in various classes,
but rather that he could not work in one single job, Postmaster of
Sacramento, under the supervision of one supervisor, Hugo Francia.
Consequently, no genuine issue of material fact exists as to whether
Plaintiff's ability to work was substantially impaired.

      Since there is no genuine issue of material fact whether any
of Plaintiff's major life activities have been substantially affected
by his alleged impairment, Plaintiff cannot establish that he is a
disabled person within the meaning of the Rehabilitation Act.
Accordingly, Defendant's motion for summary judgment on Plaintiff's
disability discrimination claim is granted.

III.  Retaliation Claims under Title VII, ADEA, and Rehabilitation Act

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation under Title VII, 42 U.S.C. §§ 2000, et seq., the ADEA, 29 U.S.C. §§ 621, et seq., and the Rehabilitation Act, 29 U.S.C. §§ 701, 791, et seq.[6]  (Def.'s Mot. at 25.)  To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) his employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and his employer's action.  Bergene, 272 F.3d at 1140-41.

It is undisputed that Plaintiff filed several informal Equal Opportunity Commission ("EEO") forms and a formal EEOC complaint. (SUF ¶¶ 32-35; Pl.'s Resp. to Def.'s SUF ¶¶ 32-35.)  Filing a complaint with the EEOC is a protected activity.  Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).  Therefore, Plaintiff has established the first element of a prima facie case of retaliation.

Defendant argues that Plaintiff cannot establish the second element of a prima facie case because the PIP, Letter of Warning, and the Notice of Proposed Reduction are not adverse employment actions. (Def.'s Mot. at 25-26.)  "An adverse employment action is one that is reasonably likely to deter employees from engaging in protected activity."  Ray, 217 F.3d at 1243.  Subjecting an employee to a hostile work environment because he engaged in protected activity is

---

[6]     The discussion of the retaliation claims under Title VII, the ADEA, and Rehabilitation Act have been combined because the framework for analysis is the same.  See e.g. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1441 (9th Cir. 1990); Coons, 383 F.3d at 887.

an adverse employment action.[7]  Id. at 1245 ("Harassment as retaliation for engaging in a protected activity . . . is the paradigm of adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in the protected activity").  Harassment is actionable only if it creates a hostile work environment which is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id.

Plaintiff contends that after he engaged in protected conduct, he was subjected to a "series of hostile actions and conduct intended to create a negative work situation." (SDF ¶ 17.)  Plaintiff offers several examples of allegedly "hostile actions and conduct" by Francia.  First, Plaintiff states that on September 19, 2001, he filed an informal EEO investigation form to initiate a complaint against Francia, and on October 16, 2001, he sent a letter to Iniguez (with copy to Francia) complaining about Francia's conduct.[8] (SDF ¶ 10; Jensen Decl. ¶¶ 15, 22.2.)  On October 23, 2001, approximately six weeks after Plaintiff filed the EEO form and one week after he sent the letter to Iniguez, Francia submitted a request to replace Plaintiff as Postmaster of the Sacramento Post Office. (See SUF ¶ 10; Francia Decl. ¶ 11.)  Plaintiff asserts that the letter "came on the

_____

[7]  Defendant argues that Plaintiff "retreated from his prima facie burden of establishing an adverse employment action by raising a new claim of hostile work environment." (Def.'s Reply at 1.)  However, Defendant misinterprets Plaintiff's argument. Plaintiff has not stated a separate claim for hostile work environment, but rather alleges that harassment by his supervisors constitutes an adverse employment action because it created a hostile work environment. (See Pl.'s Compl. ¶ 20(u); Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. for Summ. J. at 6.)

[8]  Making an informal complaint to a supervisor is also a protected activity.  Ray, 217 F.3d at 1240 n.3.

heals of protected EEO activity" and "adverse and harassing actions by
Francia followed close in time after Jensen's EEO activity." (SDF
¶ 10.)  Defendant alleges that Francia submitted the letter "based on
Plaintiff's failure to improve the performance of the Sacramento Post
Office." (SUF ¶ 10.)  Plaintiff states that when he returned to his
position as Postmaster, the Sacramento Office was performing poorly
due a lack of personnel. (Jensen Decl. ¶ 4.3.)  However, Plaintiff
alleges that he "repeatedly requested Mr. Francia to assist me in
hiring the authorized level of staffing" but that "Mr. Francia at
first refused to assist me," then accused Plaintiff of "making
excuses," and began to act on his requests only after a delay of
several weeks. (Id. at 6.)  Furthermore, Plaintiff asserts that after
he returned to his position, the performance of the Sacramento Office
improved and performed better than the entire Sacramento District.
(SDF ¶ 10; Jensen Decl. ¶ 7.)  Therefore, a genuine issue of material
fact exists as to whether the letter written by Francia was issued for
legitimate reasons or to harass Plaintiff because he engaged in a
protected activity.

        In addition, Plaintiff alleges that the PIP was an "adverse
action of harassment creating a hostile work environment." (Pl.'s
Memo. P. & A. in Opp'n at 6.)  On December 13, 2001, Francia placed
Plaintiff on a formal PIP. (SUF ¶ 15.)  The PIP was issued
approximately six weeks after Plaintiff filed a second informal EEO
investigation claim that alleged discriminatory conduct by Francia.
(See SDF ¶ 13; Jensen Decl. ¶ 74.)  Defendant contends that Francia
placed Plaintiff on the PIP in order to improve the "poor performance
of the Sacramento Post Office." (SDF ¶ 15; Francia Decl. ¶ 15.)
However, as discussed above, there is a genuine issue of material fact

regarding the performance of Plaintiff and the Sacramento Post Office. See supra page 21.  Therefore, a genuine issue of material fact exists as to whether the PIP was issued for legitimate reasons or to harass Plaintiff because he engaged in protected conduct.

Furthermore, Plaintiff argues that the February 1, 2002, Letter of Warning issued by Francia for failing to timely report an on-the-job injury not only contributed to the hostile work environment but also "in and of itself" constitutes an adverse employment action. (Pl.'s Memo. P. & A. in Opp'n at 6; SDF ¶ 29.)  The Letter of Warning was issued approximately six weeks after Plaintiff filed a formal EEO complaint alleging discrimination.  (See SUF ¶ 34; SDF ¶ 34.) Plaintiff states that a "Letter of Warning is formal discipline . . . . Its existence on the employee's record adversely impacts the conditions of employment by . . . [hindering] the employee from obtaining promotions, merit raises, or other benefits to which the employee might otherwise be entitled." (Pl.'s Memo. of P. & A. in Opp'n at 6; Charon Decl. ¶ 10.) Plaintiff states that on February 4, 2002, he "formally appealed the Letter of Warning . . . [and] Francia set up a meeting for February 8, 2002, to discuss Jensen's pending appeal." (Jensen Decl. ¶ 60; SDF ¶ 30.)  Defendant contends that Francia "would have removed the Letter of Warning from plaintiff's personnel file" if Plaintiff had met with him to discuss the letter. (Francia Decl. ¶ 29; SUF ¶ 30.)  Defendant claims that "Plaintiff did not attend the February 8, 2002 appeal meeting . . . . Instead, plaintiff advised Francia that he could no longer do the job of Postmaster of the Sacramento Post Office . . . ." (Francia Decl. 30; SUF ¶ 31.)  Plaintiff claims that he did attend the meeting, but that Francia "did not discuss his appeal nor . . . [act] upon it." (Jensen

Decl. ¶ 60; SDF ¶ 30.)  Consequently, there is a genuine issue of material fact whether an appeal was pending or had been denied by Francia's conduct.[9]  Accordingly, a genuine issue of material fact exists as to whether the Letter of Warning was an adverse employment action.

In addition, Plaintiff contends that the Notice of Proposed Reduction was "part and parcel of the harassment campaign aimed at pushing . . . [me] out of the Postal Service." (Pl.'s Mem. of P. & A. in Opp'n at 6.)  On March 22, 2002, Francia issued Plaintiff "a Notice of Proposed Reduction in Grade and Pay, proposing to reduce plaintiff from Postmaster of Sacramento (EAS-26) to Postmaster of Escalon (EAS-20)." (SUF ¶ 24.)  The Notice of Proposed Reduction was issued approximately six weeks after Plaintiff filed another informal EEO investigation form alleging discrimination by Francia.  (See SDF ¶ 35.)  Approximately four weeks after Plaintiff filed the EEO form, Francia requested an employee "to prepare a letter proposing to remove plaintiff from the position of Postmaster of the Sacramento Post Office." (SUF ¶ 23; Francia Decl. ¶ 22.)  Defendant contends that the demotion was due to Plaintiff's poor performance.  (SUF ¶ 28; Francia Decl. ¶ 27.)  However, as discussed above, there is a genuine issue of material fact regarding the performance of Plaintiff at the Sacramento Post Office.  (See supra page 21.)  Therefore, a genuine issue of material fact exists as to whether the Notice of Proposed Reduction

---

[9]    Defendant argues that the Letter of Warning is not an adverse employment action, citing Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000), because "the Letter of Warning could have been changed on appeal, had Plaintiff pursued the appeal instead of retiring." (Def.'s Reply at 6.)  However, in light of Francia's alleged actions, there is a genuine issue of material fact as to whether an appeal was pending at the time Plaintiff retired.

was issued for legitimate reasons or to harass Plaintiff because he engaged in protected conduct.

Finally, Plaintiff alleges that after a meeting with Francia in July or August 2001, Francia became "curt and hypercritical" of him, treated him "with disdain," sent him "disrespectful emails," accused him of "blowing smoke" or "making excuses," "scowled" at him, and "frequently" did not answer his correspondence on "important matters." (Pl.'s Statement of Facts at 16; Jensen Decl. ¶ 4.2.) Plaintiff also alleges that Francia "was frequently disrespectful and sarcastic to me during open meetings." (Jensen Decl. ¶ 8.)  In addition, Plaintiff alleges that he was falsely accused of misconduct when Francia accused Plaintiff of failing to inform him about the removal of certain mail collection boxes.  (See Pl.'s Statement of Facts at 37-39; Jensen Decl. ¶ 46-48.)  Plaintiff asserts, however, that he informed Francia that "the box removal process was underway . . . [and] kept him informed."  (Jensen Decl. ¶ 46-48; Pl.'s Statement of Facts at 37-39.)  Plaintiff contends that the incident was "a dishonest endeavor . . . to create the basis for a false charge that I had acted improperly when, all long, he was responsible for and participating in the collection box removal project."  (Jensen Decl. ¶ 49.)

For purposes of summary judgment, Plaintiff has presented sufficient evidence to raise a genuine issue of fact whether he was subjected to a hostile work environment.  See Ray, 217 F.3d at 1245 (sufficient evidence of retaliatory hostile work environment where plaintiff was targeted for verbal abuse, yelled at by supervisors at meetings, called a troublemaker, and falsely accused of misconduct).  As noted earlier, a hostile work environment constitutes an adverse

employment action.  Id.  Therefore, a genuine issue of material fact exists as to whether Plaintiff was subjected to an adverse employment action.

To establish the last element of a prima facie case of retaliation, Plaintiff must show a causal link between the protected activity and his employer's action.  Bergene, 272 F.3d at 1140-41. Causation can be inferred from timing alone.  Passantino v. Johnson & Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000).  Plaintiff asserts that the harassment by Francia occurred only six weeks after Plaintiff engaged in protected activities.  See supra pages 21-25. Consequently, a causal link can be inferred from the proximity in time between the Plaintiff's protected activities and the alleged harassment.  See Ray, 217 F.3d at 1244; Yartoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (stating that causation was established where adverse action occurred less than three months after complaint filed, two weeks after charge investigated, and less than two months after investigation ended).  Therefore, a genuine issue of material fact exists as to the requisite causal link.

Accordingly, Plaintiff has established a prima facie case of retaliation.  Therefore, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the allegedly discriminatory conduct.  Bergene, 272 F.3d at 1140-41.  As discussed previously, Defendant has provided legitimate, non-discriminatory reasons for the allegedly retaliatory actions.  See supra pages 6-7. Consequently, the burden shifts back to Plaintiff to show that Defendant's proffered reasons are a pretext for retaliation.  Bergene, 272 F.3d at 1140-41.

1     As evidence of pretext, Plaintiff asserts that in 2001 he
2  and Francia attended a meeting to discuss the "redress" mediation
3  process through which EEO complaints can be resolved informally.
4  (Pl.'s Statement of Facts at 22; Jensen Decl. ¶ 16.1.)  At the end of
5  the meeting, Francia addressed the group, stating that people only
6  file EEO complaints "to get money," that "we are not a bank," and that
7  employees can go to redress meetings but "don't settle anything."
8  (Id.)  Plaintiff argues that this incident "shows Francia's disdain
9  for the EEO process and for those who use it."  (Pl.'s Mem. of P. & A.
10 in Opp'n at 8.)  This incident, when viewed in conjunction with the
11 proximity in timing between Plaintiff's EEO filings and the employment
12 actions taken by Francia, is sufficient to create a genuine issue of
13 material fact as to whether Defendant's reasons for the employment
14 actions were pretextual.  Therefore, Defendant's motion for summary
15 judgment on Plaintiff's retaliation claim is denied.

16 IV.  Constructive Discharge

17     Defendant argues that Plaintiff cannot establish a prima
18 facie case of constructive discharge.  (Def.'s Mot. at 26.)  A prima
19 facie case of constructive discharge requires more than a showing of a
20 hostile work environment.  Pennsylvania State Police v. Suders,
21 __ U.S. __, 124 S.Ct. 2342, 2354 (2004).  To establish a prima facie
22 case of constructive discharge, a plaintiff must show "working
23 conditions so intolerable that a reasonable person would have felt
24 compelled to resign."  Id.; Bergene, 272 F.3d at 1143-44 (stating that
25 plaintiff must show "a triable issue of fact as to whether a
26 reasonable person in [her] position would have felt that [she] was
27 forced to quit because of intolerable and discriminatory working
28 conditions").  The Ninth Circuit has stated:

> The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact. However we have noted that, in general, a single isolated instance of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge . . . . Hence, a plaintiff alleging a constructive discharge must show some aggravating factors such as a continuous pattern of discriminatory treatment.

Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987) (citations omitted).

Plaintiff argues he has established a prima facie case of constructive discharge because he was forced to retire against his will. (Pl.'s Mem. of P. & A. in Opp'n at 8.) Plaintiff contends that during a meeting with Francia in July or August 2001, Francia told him that "he wanted him to consider leaving his postmaster position for another detail." (Pl.'s Statement of Facts at 15, Jensen Decl. ¶ 4.1.) When Plaintiff declined to leave, Francia allegedly stated "[w]ell, you might be better off if you went ahead and took this assignment." (Id.) Plaintiff contends that he felt threatened by Francia's tone and his remarks. (Id.) As discussed previously, Plaintiff also claims he was subjected to discriminatory actions because of his race, such as his removal from the Key Resources List and the cancellation of his management training. (See supra pages 5-6.) In addition, Plaintiff contends he was subjected to discriminatory remarks because of his age, such as alleged remarks by Francia that "people who are eligible to retire should 'go ahead.'" (Jensen Decl. ¶ 17.2; see supra pages 8-9.) Plaintiff further asserts he was harassed after he engaged in protected activities, he was falsely accused of misconduct, and Francia treated him with disdain, sent disrespectful emails, and accused him of making

1  excuses. (See supra pages 20-24.)  Plaintiff alleges that all of these

2  actions took place over an eleven-month period, between May 2001, when

3  he resumed his job as Postmaster, and March 2002, when he resigned.

4        Plaintiff has alleged sufficient facts to raise a genuine

5  issue of material fact whether his working conditions were so

6  intolerable that a reasonable person would have felt compelled to

7  resign. (See Watson, 823 F.2d at 361 ("The determination whether

8  conditions were so intolerable and discriminatory as to justify a

9  reasonable employee's decision to resign is normally a factual question

10  left to the trier of fact.").  Plaintiff has not alleged that he was

11  subjected one isolated instance of employment discrimination, but

12  rather to eleven months of harassment and discriminatory treatment.

13  See id.  Therefore, Defendant's motion for summary judgment on

14  Plaintiff's constructive discharge claim is denied.

15  V.  Punitive Damages under the Rehabilitation Act

16        Defendant argues that Plaintiff is not entitled to punitive

17  damages against the Postal Service under the Rehabilitation Act.

18  (Def.'s Mot. at 32-33.)  Plaintiff "does not oppose the granting of the

19  motion" as to this issue. (Pl.'s Statement of Non-Opp'n at 1.)

20  Furthermore, punitive damages may not be awarded in private suits

21  brought under the Rehabilitation Act. Barnes v. Gorman, 536 U.S. 181,

22  189 (2002).  Therefore, Defendant's motion to strike Plaintiff's prayer

23  for punitive damages under the Rehabilitation Act is granted.

24  VI.  Damages under the ADEA

25        Defendant argues that Plaintiff is not entitled to damages

26  for pain and suffering under the ADEA. (Def.'s Mot. at 33.)  Plaintiff

27  "does not oppose the granting of the motion" as to this issue. (Pl.'s

28  Statement of Non-Opp'n at 2.)  Furthermore, the ADEA does not permit a

1  separate recovery of compensatory damages for pain and suffering.

2  Comm'r of Internal Revenue v. Schleir, 515 U.S. 323, 326 (1995) (noting

3  that all the Courts of Appeal have unanimously held that compensatory

4  damages for pain and suffering are not available), Naton v. Bank of

5  Cal., 649 F.2d 691, 698 (9th Cir. 1981) (stating that "damages for pain

6  and suffering may not be awarded under the ADEA").   Therefore,

7  Defendant's motion to strike Plaintiff's prayer for damages for pain

8  and suffering under the ADEA is granted.

9  VII.   Right to Jury Trial under ADEA

10         Defendant argues that Plaintiff is not entitled to a jury

11  trial under the ADEA.   (Def.'s Mot. at 34.)   Plaintiff "does not oppose

12  the granting of the motion" as to this issue.   (Pl.'s Statement of Non-

13  Opp'n at 2.)   Furthermore, a federal employee does not have a right to

14  a jury when suing the government under the ADEA.   Lehaman v. Nakshian,

15  453 U.S. 156, 165, 168 ("Congress did not intend to confer a right to

16  trial by jury on ADEA plaintiffs proceeding against the Federal

17  Government.").   Therefore, Defendant's motion to strike Plaintiff's

18  demand for a jury trial on this claim is granted.

19                              CONCLUSION

20         Defendant's motion for summary judgment on Plaintiff's gender

21  discrimination claim and disability discrimination claim are granted.

22  Defendant's motion to strike Plaintiff's request for punitive damages

23  under the Rehabilitation Act, request for general damages under the

24  /////

25  /////

26  /////

27  /////

28

1  ADEA, and request for a jury trial under the ADEA are granted.

2  Defendant's motion is otherwise denied.

3            IT IS SO ORDERED.

4  DATED:  October 27, 2005

5                                    /s/ Garland E. Burrell, Jr.
                                     GARLAND E. BURRELL, JR.
6                                    United States District Judge